UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| FIRST BANK & TRUST d/b/a FIRSTLINE FUNDING GROUP, | * * * | CIV. 18-4123 |
| Plaintiff, | * * | |
| vs. | * * | MEMORANDUM OPINION AND ORDER |
| COMPLETE COMMUNICATIONS, INC., JAMES GARRETT CONNOR and SARAH BETH CONNOR, | * * * * | |
| Defendants. | * * | |

Pending before the Court is Defendants Complete Communications, Inc., James Garrett Connor, and Sarah Beth Connor's ("Defendants") Motion to Dismiss. (Doc. 7.) In addition, Plaintiff First Bank & Trust d/b/a Firstline Funding Group ("Firstline"), moves to amend its Complaint. (Doc. 11.) For the following reasons the motion to amend will be granted. The Court will construe the motion to dismiss as a motion to transfer under 28 U.S.C. § 1404(a), and will allow more briefing by the parties before ruling on the motion.

**FACTUAL BACKGROUND**

Firstline, a South Dakota banking corporation, brought this action against Defendants in the Circuit Court of Minnehaha County, South Dakota, seeking $92,062.69 in damages. On September 24, 2018, Defendants removed the action to this Court based on diversity of citizenship. Defendant Complete Communications, Inc. ("Complete") is a resident of North Carolina, and Defendants Sarah Connor and James Connor are residents of Colorado.

The initial Complaint alleges that Firstline entered into a factoring and security agreement ("Agreement") with Complete wherein Firstline agreed to purchase accounts of Complete on a full

recourse basis. Pursuant to the Agreement, Firstline became the assignee and owner of all Complete accounts with the sole right to collect the proceeds thereof. Firstline claims that James Connor and Sarah Connor each executed a guaranty to Firstline guaranteeing the obligations of Complete to Firstline. Defendants allegedly submitted multiple invoices to Firstline that they knew were subject to claims, deductions, setoff and defenses. They sold invoices to Firstline that their account debtors, in particular DAB Drilling, were unable or unwilling to pay. The complaint asserts five causes of action against Defendants: 1) breach of contract by Complete; 2) enforcement of security interest against Complete; 3) promissory estoppel against Complete; 4) breach of guaranty agreement by Beth Connor; and 5) breach of guaranty agreement by Garrett Connor.

The initial Complaint states that jurisdiction is proper because Defendants executed a contract agreeing that the proper jurisdiction for all disputes is South Dakota, with South Dakota law applying in all respects.

On October 1, 2018, Defendants filed an Answer denying that they entered into the Agreement with Firstline. (Doc. 3.) Rather, Defendants entered into the Agreement and the two individual guarantees with a Washington corporation called DB Squared. Defendants' Agreement with DB Squared has a clause in which the parties expressly agreed to apply Washington law and to litigate any disputes in Washington:

> EXCEPT AS EXPRESSLY AGREED IN WRITING BY DB SQUARED, THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF WASHINGTON SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES ARISING UNDER OR RELATING TO THIS AGREEMENT. NO LAWSUIT, PROCEEDING, ALTERNATIVE DISPUTE RESOLUTION, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS AGREEMENT MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM, EXCEPT AS EXPRESSLY AGREED IN WRITING BY DB SQUARED.

(Doc. 9-1 at ¶ 32.) DB Squared assigned the Agreement to Firstline. Subsequently, Defendants entered into an addendum with Firstline which detailed some additional fees but did not otherwise revise any of the terms of Defendants' Agreement with DB Squared. (Doc. 9-5.)

that it has the right to unilaterally change the forum to South Dakota and that it did so by filing the lawsuit here.

In addition, Firstline points out that a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) is not the appropriate means to enforce a forum selection clause. *See City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017) (holding district court erred by ruling it lacked subject matter jurisdiction under Rule 12(b)(1) due to an arbitration clause in a contract signed by both parties). In *Benkelman*, the Eighth Circuit held that a Rule 12(b)(6) motion to dismiss or summary judgment under Rule 56 are the appropriate vehicles to compel arbitration. *Id.* at 881. The Eighth Circuit noted that, to the extent the defendant sought to enforce the forum-selection clause independent of the arbitration agreement, it "should have invoked the *forum non conveniens* doctrine." *Id.* at 882 n. 6 (citing *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the Western Dist. Of Texas*, 571 U.S. 49, 60 (2013)).

In their reply brief, Defendants say that the Eighth Circuit has not been clear whether a case can be dismissed based on a valid forum selection clause, and they cite *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750 (8th Cir. 1999). There, the Eighth Circuit affirmed the district court's dismissal of the lawsuit for improper venue because the parties' agreement contained a forum clause providing that any litigation be conducted in Utah. *See id.* at 753.

The landscape has changed since the Eighth Circuit's 1999 opinion in *M.B. Restaurants*. In 2013, the United States Supreme Court provided guidance on the procedure for federal courts presented with a motion to dismiss or transfer based on a forum selection clause. *See Atlantic Marine*, 571 U.S. 49. The Supreme Court foreclosed the use of Rule 12(b)(3) motions to dismiss to enforce mandatory forum selection clauses. *Id.* at 55-56. The Court explained that "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55 (citing 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3)); *see also In re Union*

*Elec. Co.*, 787 F.3d 903, 907 (8th Cir. 2015) (stating that *Atlantic Marine* "clearly eliminated the possibility of using Rule 12(b)(3) as a means to enforce a forum-selection clause").

The lower courts in *Atlantic Marine* had rejected transfer because the party seeking to enforce the forum selection clause had not demonstrated that the factors in the transfer statute, 28 U.S.C. § 1404(a), were met. The Supreme Court disagreed and stated that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." 28 U.S.C. § 1404(a), which "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system," does not govern most situations where the forum selection clause points to a non-federal venue. Nevertheless, the Court determined that § 1404(a) provides the appropriate procedural avenue for evaluating those situations, too. It authorizes courts to transfer cases "to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In cases that do no not involve a forum selection clause, a district court must balance "the convenience of parties and witnesses" and "the interest of justice." *Id.* at 62. If there is a valid forum selection clause, however, courts applying § 1404(a) must give forum selection clauses "controlling weight in all but the most exceptional cases." *Id.* at 63. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Forum selection clauses thus will be enforced under § 1404(a) except where unusually strong public interest factors counsel against such a transfer. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n. 6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981)).

Firstline does not challenge the validity or enforceability of the forum selection clause. There are only two narrow issues before the Court regarding the selection clause in this case. First, Firstline

5

argues that it was allowed to change, and did change, the forum to South Dakota. Second, if Firstline is wrong, this Court must decide if the case should be transferred to Washington in light of the existence of a valid, enforceable forum selection clause.[1]

## ANALYSIS

### A. Is Firstline Bound by the Forum Selection Clause in the Agreement?

Firstline asserts that DB Squared assigned to Firstline the rights, benefits and remedies of DB Squared under the Agreement with Defendants. Thus, Firstline stepped into the shoes of DB Squared. *See Kroeplin Farms Gen. P'ship v. Heartland Crop Ins.*, 430 F.3d 906, 911 (8th Cir. 2005) (noting that under South Dakota law, the assignee stands in the same shoes as the assignor) (quoting *In re Estate of Wurster*, 409 N.W.2d 363, 366 (S.D. 1987)) (Wuest, C.J., dissenting). Accordingly, Firstline is subject to the same terms as DB Squared. The Agreement lists Washington as the forum to litigate disputes under the Agreement, and Firstline is bound by DB Squared's forum selection clause. As such, there is a valid forum selection clause between Firstline and Defendants listing Washington as the forum.

The Third Circuit has noted that even nonsignatories may be bound to a forum selection clause. *See In re McGraw-Hill Global Education Holding LLC*, 909 F.3d 48, 69-70 (3d Cir. 2018). Because the nonsignatories in *McGraw-Hill* were not intended third-party beneficiaries to the contract or closely related parties, the Third Circuit held that they were not bound by the forum selection clause. *Id.* at 59. In addressing the reach of *Atlantic Marine*, however, the Third Circuit explained in *dicta* that non-signatories who were aware of the existence of the contract between others and premised their own claims on that contract would be bound by a forum selection clause because "[s]uch an eyes-wide-open plaintiff – one who gets the benefit of the parties' bargain and has the corresponding right to sue – would be bound by the terms of the forum selection clause just

---

[1] Instead of requiring Defendants to amend their motion to request transfer to Washington, the Court will construe Defendants' motion to dismiss for lack of jurisdiction as a motion to transfer under 28 U.S.C. § 1404(a). The Supreme Court declined to address whether dismissal would be appropriate under Rule 12(b)(6) if a plaintiff files suit in a district other than the one specified in the forum selection clause. *See Atlantic Marine*, 571 U.S. at 61.

as the signatories would be." *Id.* at 70. *See also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles").

As an assignee, Firstline is much closer than a third-party beneficiary of a contract or a closely related party at issue in *McGraw-Hill*, and Firstline does not contest the general proposition that forum selection clauses are enforceable against an assignee. Firstline truly is an "eyes-wide-open plaintiff" in this case. The Agreement's forum selection clause is clear and was available to Firstline at the time it accepted the assignment of the Agreement from DB Squared. The circumstances indicate that Firstline, a sophisticated party, knew, or should have known, about the forum selection clause when it took the assignment. Firstline was on equal, perhaps superior, footing with the Defendants when preparing the addendum to the Agreement. If Firstline did not want the Washington forum selection clause in the Agreement, it simply needed to bargain with Defendants for a different forum and change the forum selection clause if Defendants agreed. There is no showing that the selection clause was ever changed. Firstline is bound by the forum selection clause in the Agreement even if it is inconvenient. *See Atlantic Marine*, 571 U.S. at 64 ("[W]hatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting.").

Firstline's claim that it changed the forum in the selection clause is unpersuasive. Firstline contends the case should remain in South Dakota because it had the right to change the forum based on language in the Agreement allowing DB Squared to agree in writing to litigate in a forum other than Washington. According to Firstline, this language allows it, as DB Squared's assignee, to unilaterally change the forum to South Dakota. Even if the Court were to accept Firstline's strained interpretation of the language in the Agreement,[2] Firstline offers no evidence that it changed the

---

[2] Firstline cites no authority in support of its interpretation that the language it refers to gives DB Squared or its assigns the right to unilaterally change the forum. Firstline's interpretation would make sense if the Agreement stated that, in the event of an assignment, any disputes would be brought in the state of incorporation of the assignee.

7

forum to South Dakota in writing. It simply offers the *ipse dixit* that it "properly selected South Dakota," where Firstline conducts its operations as the forum for this lawsuit. (Doc. 15 at 2, 9.)

In summary, as assignee of the Agreement, Firstline stepped into the shoes of DB Squared under the Agreement. As a result, without any showing that Firstline and Defendants had a meeting of the minds on a different forum, Firstline is bound by the forum selection clause in the Agreement.

### B. Should this Case be Transferred to Washington?

Firstline argues that the convenience of the parties and witnesses and Firstline's choice of forum weigh against transfer. However, those are traditional § 1404(a) factors. The existence of a valid forum selection clause requires the Court to ignore those factors and only consider arguments about public interest factors. *Atlantic Marine*, 571 U.S. at 63-64 (in the face of a valid forum selection clause, no weight is given to the plaintiff's choice of forum and the court does not consider arguments about the parties' private interests; instead, "a district court may consider arguments about public-interest factors only").

The Supreme Court said "it is conceivable in a particular case" that public interests would defeat a forum selection clause. *Atlantic Marine*, 571 U.S. at 64. Firstline bears the burden of establishing that transfer to Washington is unwarranted. *See id.* at 63. Firstline does not point to any public interest factors or any extraordinary circumstances that clearly disfavor a transfer. However, *Atlantic Marine* was not cited by Defendants until they submitted their reply brief in support of the motion to dismiss, so Firstline has not had an opportunity to address *Atlantic Marine* and public interest factors. The Court will allow supplemental briefing on the public interest factors before deciding whether to transfer this case to Washington.

### C. Should Firstline be Allowed to Amend its Complaint?

Firstline requests leave to amend in order to correct the facts surrounding the Agreement, to add a negligent misrepresentation claim, and to make some other minor changes. Defendants object

8

on the ground that the amendment is futile because the forum selection clause requires this Court to dismiss or transfer the case. (Doc. 18.)

"The Federal Rules of Civil Procedure liberally permit amendments to pleadings." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000); *see also* FED.R.CIV.P. 15(a)(2) ("The court should freely give leave when justice so requires."). A timely motion to amend pleadings should normally be granted under Rule 15(a) absent good reasons to the contrary. *See Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). A district court appropriately denies the motion to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal marks omitted).

At this stage the Court is unable to conclude that Firstline's negligent misrepresentation claim is futile, and the other proposed amendments are simply for clarification and correctness. The fact that the case could be transferred is not an appropriate reason to deny the motion to amend the complaint, and there is no other reason to deny the motion. Accordingly,

**IT IS ORDERED:**

1. That the motion to amend complaint, doc. 11, is granted;

2. That, within 20 days after entry of this Order, Firstline shall file a brief addressing public interests that could defeat enforcement of the forum selection clause;

3. That Defendants may file a response within 10 days after receipt of Firstline's brief; and

4. That Firstline may file a reply brief within 5 days after receipt of Defendants' response.

Dated this 24TH day of June, 2019.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

/s/ Matthew Thelen